[Sac. No. 4779. In Bank.—February 8, 1934.]

R. LEWIS, Respondent, v. SHELL OIL COMPANY (a Corporation), Appellant.

F. F. Thomas, Jr., William E. Wright and McCutchen, Olney, Mannon & Greene for Appellant.

Barcroft & Barcroft and John J. Coghlan for Respondent.

THOMPSON, J.—This litigation revolves around a contract, between the parties, in the following words:

"This agreement, made and entered into this 22nd day of March, 1927, by and between R. Lewis of the City of Madera, County of Madera, State of California, and Shell Company of California, a California Corporation.

"That for the term, at the rental and upon the conditions, covenants and agreements hereinafter expressed and subject thereto and in consideration of One ($1.00) Dollar to said R. Lewis in hand paid, receipt of which is hereby acknowledged, said R. Lewis hereby agrees that the Shell Company of California shall lease the exclusive advertising privileges on the signs on top of building, and certain panels on south side of said building of said R. Lewis for a period of five (5) years from completion of said work or during the life of this agreement.

"In consideration of the Shell Company of California leasing the exclusive advertising privileges for which they agree to pay a sum of Fifty ($50) Dollars per month for a period of five years from March 22nd, 1927, to March 22, 1932, said R. Lewis hereby agrees to purchase petroleum products from the Shell Company of California for sale and dispensing through the following units of equipment: One Wayne visible Curb pump, Cut 711, Serial 72349; One Bowser buggy, serial C. 17554; 2 Lub-oil containers. In event of said R. Lewis' removal from his present location, or sale of lease under which he holds premises, he shall have the right to carry on under this agreement at his new place of business, under the same terms and conditions herein

provided, over a period of even and consecutive dates during which time the advertising privileges are hereby leased.

"It is further agreed that the Shell Company of California are to secure not less than the sum of 100 per cent of the total volume of gasoline business sold and not less than 75 per cent of the total volume of lubricating oil by said R. Lewis during the life of this agreement. Differential, on gasoline, not less than three (3) cents per gallon, during the life of this agreement."

On July 31, 1930, the defendant company refused to sell Lewis any further supply of gasoline. This action was commenced to recover damages for the company's refusal in this regard. The defense, by way of demurrer, and subsequently by answer, amounts to the same contentions as are now advanced on this appeal by it from the judgment entered on a verdict of the jury in plaintiff's favor, together with an appeal from an order denying defendant's motion for a judgment *non obstante veredicto.*

It is asserted by appellant that the agreement is void for uncertainty because there is no basic price established by the agreement from which to determine, by means of the differential, the selling price of gasoline to the respondent and because no price whatever was agreed upon for lubricating oils. It is also urged that for the entire period of the contract up to and including the day on which the defendant refused to sell gasoline to the respondent, the latter had violated and breached the agreement by failure to purchase seventy-five per cent of his total value of lubricating oil, but had secured more than sixty per cent of his requirements from the Pennzoil Oil Company. In truth, the record discloses that he purchased the following percentages per annum from appellant: In 1927, thirty-nine per cent; in 1928, thirty-nine per cent; in 1929, thirty-six per cent, and in 1930, forty per cent.

We are not inclined in this case to follow counsel through the long arguments and authorities concerning the certainty or uncertainty of the contract, because this uncontradicted fact remains that respondent had consistently purchased more than sixty per cent of his lubricating oil from another company. His contention is that after the appellant refused to deliver gasoline he ordered enough oil to make up the shortage and that he had the whole term of

the contract within which to purchase seventy-five per cent of his requirements. With this contention we cannot agree. Assuming, solely for the purpose of argument, that the contract was valid and certain it is evident that it was the plain intent of the parties that he should purchase from the defendant company seventy-five per cent of the oil sold by him in the ordinary course of his business. To test his compliance with this provision a reasonable length of time and a reasonable run of business would be the standard. But to say that for four years and four months he can make no pretense of complying with the covenant by him to be performed and yet exact damages from the other party for failure to discharge its obligation, is reducing the situation to an absurdity. The rule of law is so elementary and fundamental and so in keeping with good conscience and common justice, that we need do no more than refer to *Los Angeles Gas & Elec. Corp.* v. *Amalgamated Oil Co.*, 168 Cal. 140 [142 Pac. 46], and *Sterling* v. *Gregory*, 149 Cal. 117 [85 Pac. 305].

This contention is founded upon the proposition that the contract under consideration is entire—which cannot successfully be denied. Whether a contract is severable or entire is a question of interpretation, depending upon the intent of the parties. (*Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776 [106 Pac. 55].) The contract in the present case can be properly likened to an agency contract for the sale of appellant's products, both gasoline and lubricating oils. The parties by their writing specified the maximum permissible departure from exclusive representation of appellant by respondent, thereby manifesting their intent that the contract should not be severable, but entire. In other words, the nature of the subject matter was such and the language of the parties such as to indicate that the purchase by respondent from appellant of one hundred per cent of his gasoline and seventy-five per cent of his lubricating oil requirements was essential to the contract.

The entirety of the agreement also disposes of respondent's contention that he was entitled to recover by a supplemental complaint filed by him the rental of the advertising space. Not only is it apparent from a reading of the agreement that the roof and panels were leased in consideration of the agreement of respondent to purchase Shell gasoline

exclusively and seventy-five per cent of Shell lubricating oil, but also it is in evidence that the rental was based upon an estimate of respondent's annual sale of gasoline, calculated upon previous years at the rate of one cent per gallon. The contract being nonseverable, respondent was not entitled to recover after his own persistent failure to comply.

As heretofore indicated, the defendant, after the return of the jury's verdict, but before the entry of the judgment, made a motion for a judgment *non obstante veredicto,* which was denied and from which order it has also appealed. We are asked to reverse this order and, by so doing, in effect, direct the trial court to enter judgment against the plaintiff and for defendant. ■ In view of the plain language of section 963 of the Code of Civil Procedure, the conclusion is inescapable that the order is appealable. Subdivision 2 of that section specifies an "order denying a motion for judgment notwithstanding the verdict in an action or proceeding tried by a jury where such trial by jury is a matter of right". Concededly the parties here were entitled to a trial by jury as a matter of right—hence the appeal lies. We are not called upon, in this instance, to say whether in all cases where the evidence is insufficient to support the verdict and such a motion has been denied, we are under the obligation to direct a verdict in favor of the moving party. That there is grave doubt upon that general question is suggested by the language of section 629 of the Code of Civil Procedure, which indicates that the order may rest in the judicial discretion of the appellate tribunal. We do not decide this question because our previous discussion very clearly demonstrates that the order should have been granted and that a different result on retrial can hardly be imagined. For which reasons, the order should be reversed with instructions.

Other points are raised by the appellant which we deem it unnecessary to discuss.

The judgment and order are reversed and the trial court instructed to enter a judgment for defendant.

Shenk, J., Seawell, J., Curtis, J., Preston, J., and Waste, C. J., concurred.